IN THE UNITED STATES DISTRICT COURT FOR THE
NORTH DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Tammy Trost, | ) |
| | ) |
|     Plaintiff, | )   Case No. 21 C 50255 |
| | ) |
| vs. | ) |
| | )   Judge Philip G. Reinhard |
| Dixon Unit School District 170, et al., | ) |
| | ) |
|     Defendants. | ) |

**ORDER**

    For the reasons stated below, plaintiff's motion for a preliminary injunction is granted. Defendants shall pay for A.M.'s residential placement at Brehm starting August 21, 2021 per the terms of the Mediation Agreement entered May 3, 2021, until further order of court. Plaintiff shall submit a proposed injunction order consistent with this memorandum opinion and in compliance with Fed. R. Civ. P. 65.

**MEMORANDUM OPINION**

    Plaintiff, Tammy Trost, individually and on behalf of her son, A.M., a minor, brings this action against defendants, Dixon Unit School District 170 ("District") and the Lee County Special Education Association ("LCSEA") [1], Margo Empen, in her official capacity as superintendent of the District. and Corena Steinmeyer, in her official capacity as director of LCSEA, to enforce a mediation agreement, with defendants entered pursuant to 20 U.S.C. § 1415(e), and for breach of contract. Jurisdiction is proper in this court for the enforcement action pursuant to 20 U.S.C. § 1415(e)(2)(F)(iii). The court has supplemental jurisdiction over the breach of contract action. 28 U.S.C. § 1367. Plaintiff has moved for a temporary restraining order and preliminary injunction seeking to require defendants to comply with the mediation agreement by ordering defendants to fund A.M.'s placement in the residential program at Brehm Preparatory Academy beginning with the Fall Semester 2021 starting on August 21, 2021. The parties have fully briefed the motion and provided evidentiary materials. The court will proceed on the preliminary injunction request.

    "To obtain a preliminary injunction, plaintiff must first show that: (1) without such relief, it will suffer irreparable harm before final resolution of its claims; (2) traditional legal remedies would be inadequate; and (3) it has some likelihood of success on the merits. If plaintiff makes such a showing, the court must next weigh the harm the plaintiff will suffer without an injunction against the harm the defendant will suffer with one. This assessment is made on a sliding scale: The more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his

---

[1] LCSEA is a special education cooperative that has an intergovernmental agreement with the District to provide special education services, professionals, and services for students in the District.

1

favor.  Finally, the court must ask whether the preliminary injunction is in the public interest, which entails taking into account any effects on non-parties." *Courthouse News Service v. Brown*, 908 F.3d 1063, 1068 97th Cir. 2018).

The parties have submitted a joint statement of agreed material facts [32] and the court will address the motion for preliminary injunction on these facts. *See City of Indianapolis v. Edmond*, 531 U.S. 32 (2000).  The following facts are taken from the statement of agreed facts and from documents referenced in it.  On April 13, 2021, plaintiff filed an administrative due process complaint against defendants with the Illinois State Board of Education ("ISBE").  She alleged the District failed to provide the right educational setting with the adequate educational services he required.  The relief sought included placement at Brehm Preparatory Academy starting with the summer 2021 term and extending through the end of the summer 2023 program.  The parties elected to participate in a state-sponsored mediation session in attempt to resolve the matter.  The mediation session occurred on May 3, 2021 and resulted in a written mediation agreement ("Agreement").

Under the terms of the Agreement, plaintiff along with A.M.'s father, agreed to withdraw the pending due process complaint, released defendants from all claims arising prior to the Agreement and prospectively released all claims against defendants under the Illinois School Code, Individuals with Disabilities Education Act ("IDEA"), section 504 of the Rehabilitation Act, the Americans with Disabilities Act, the Illinois Human Rights Act, and any ISBE regulations "up to and through the end of the Educational Placement Period."  The Agreement stated the Educational Placement Period would begin with "Extended School Year ("ESY") for the Summer of 2021 and continuing through the end of the 2021-2022 school year, excluding ESY for the Summer of 2022."  The Agreement provided that the District would amend A.M.'s IEP "to provide for placement in a residential facility" for the Educational Placement Period.  It further provided that A.M.'s parents "agree to cooperate by signing Releases of Information to allow the District to share referral packets with residential facilities, including Brehm Preparatory Academy" and that "[u]pon acceptance into a residential facility, the District will fund the placement consistent with the Students IEP."

On May 4, 2021, the day after the Agreement was entered, Director Steinmeyer, in accordance with the Agreement, asked plaintiff to sign a Release of Information that would allow the District to share A.M.'s educational records with Brehm, as discussed and agreed upon during mediation.  Plaintiff signed and returned the Release to Director Steinmeyer on May 7, 2021.

An amendment to the IEP was made on May 8, 2021.  The notification of IEP amendment (ISBE Form 34-57G) sent to plaintiff stated that Superintendent Empen "agreed to make the following changes to your child's current IEP as indicated below."  Under the heading "Changes and Explanation of Changes" the document states: "An agreement was made during mediation to change student placement to private residential." It indicated the changes would begin on 6/20/2021.  This document was signed by Director Steinmeyer.  The notification of conference recommendations (ISBE Form 34-57E) sent to plaintiff by Director Steinmeyer stated that the recommendation from the conference held on May 3, 2021, "it was determined

2

that your child will receive special education and related services as listed in the IEP" and that he receive a "Change of Placement".

The "Education Services and Placement" document provided for a start date of 6/20/2021 and an end date of 5/4/2022. It stated A.M. "will be attending an out-of-district private school to best meet his needs" and that he "requires intensive specialized instruction that requires him to be in a separate special education environment 100% of the time." It provided that extended school year services were needed and that the extended school year services would begin on 6/20/2021 and end 7/17/2021.

A.M. was accepted into Brehm on June 10, 2021 and Brehm advised Director Steinmeyer of his acceptance via email that evening. On June 17, 2021, Director Steinmeyer was advised by the ISBE that Brehm residential was not an ISBE approved residential program though Brehm's educational program was ISBE approved. She had previously been advised by the ISBE that Brehm was ISBE approved as a residential placement.

On June 18, 2021, Director Steinmeyer advised Brehm that the "district is not in a position to place a student in a placement that is not ISBE approved, and in this case, the residential portion. Therefore, placement will need to be put on hold for [A.M.] unless parents intend to self-pay." That same day, June 18, 2021, counsel for the District forwarded three additional Release of Information forms to plaintiff's counsel so they could begin the process of submitting applications for A.M.'s placement at a different, ISBE-approved residential facility.

The District did not fund A.M.'s participation in Brehm's residential program for the ESY summer program beginning on June 20, 2021. Plaintiff did not return any of the additional Release of Information forms. Plaintiff filed this lawsuit on June 25, 2021. The parties have attempted to resolve this matter since then but have not done so.

Likelihood of Success on the Merits

The parties agree Illinois contract law governs the interpretation of the Agreement. Illinois law gives the language of a contract its plain and ordinary meaning. The Agreement provides: "Upon acceptance into a residential facility, the District will fund the placement consistent with the Student's IEP." A.M. was accepted into Brehm's residential facility on June 10, 2021. Giving the words "upon acceptance into a residential facility" their plain and ordinary meaning, A.M.'s acceptance at Brehm triggered the District's obligation to "fund the placement consistent with the Student's IEP." Defendants offer several reasons as to why the Agreement does not obligate the District to pay for A.M.'s residential placement at Brehm.

Defendants argue it would be illegal to place A.M. at Brehm because doing so would violate Illinois law and Illinois law is read into any Illinois contract unless there is contractual language to the contrary. Defendants contend placement at Brehm would violate 23 Ill. Admin. Code 401.10 which states: "A program not approved in accordance with the requirements of this Part shall not be used by public school districts to serve students with disabilities under Section 14-7.02 of the School Code." However, the Seventh Circuit Court of Appeals has stated that regulation "means that a non-approved program is ineligible for reimbursement under § 14-7.02,

3

not that such a program 'shall not be used' at all." *Board of Education of Oak Park and River Forest High School District No. 200 v. Kelly E., et al*, 207 F.3d 931, 934 (7th Cir. 2000). There do not appear to be any cases supporting defendants' view that section 401.10 is a bar to placement rather than a rule concerning obtaining reimbursement from the ISBE.

Defendants argue plaintiff has not performed under the Agreement because she did not cooperate by signing Releases of Information to allow the District to share referral packets with other residential facilities. They argue plaintiff is preventing them from performing under the Agreement by depriving them of the ability to refer A.M. to another residential facility.

While it is true the Agreement provided that the parents "agree to cooperate by signing Releases of Information to allow the District to share referral packets with residential facilities, including Brehm Preparatory Academy," the undisputed fact is that the only Release of Information form Director Steinmeyer sent to plaintiff the day after execution of the Agreement was for Brehm. Plaintiff signed it and returned it and A.M. was accepted into Brehm's residential facility on June 10, 2021. Plaintiff was not sent any Release of Information forms for any other residential facility prior to A.M.'s acceptance at Brehm. Since the Agreement provided that "[u]pon acceptance into a residential facility, the District will fund the placement consistent with the Student's IEP," the purpose of providing Release of Information forms had been met. Plaintiff had provided the only form she had been asked to provide, defendants had shared a referral packet with that residential facility, and A.M. had been accepted by that facility. The acceptance triggered the District's obligation to fund that placement. Plaintiff's refusal to provide additional Releases of Information after A.M. had been accepted at Brehm did not prevent defendants from performing under the Agreement because their obligation to fund the residential placement at Brehm had already been fixed by A.M.'s acceptance at Brehm, well before defendants asked for any additional Releases of Information.

Defendants argue the Agreement should be rescinded based on the doctrine of mistake because at the time they entered the Agreement they believed Brehm was approved by ISBE for a residential placement. They argue that under Illinois law, recission is permitted for a unilateral mistake if the party seeking rescission shows by clear and convincing evidence that the mistake is of a material nature, is of such consequence that enforcement is unconscionable, occurred notwithstanding the exercise of due care by the party seeking rescission and rescission can place the other party in status quo. *Al Maha Trading & Contracting Holding Co. v. W.S. Darley & Co.*, 936 F. Supp. 2d 933, 944 (N.D. Ill. 2013).

"[C]ourts should be hesitant to set aside settlements that are reached knowingly and voluntarily." *Billhartz v.Commissioner*, 794 F.3d 794, 799 (7th Cir. 2015). "Under Illinois law, a contract is unconscionable when, viewed as a whole, it is improvident, oppressive, or totally one-sided." *Zippysack LLC v. Ontel Products Corporation*, 182 F. Supp. 3d 867, 872-73 (N.D. Ill. 2016) (quotation marks and citation omitted). Defendants received in the Agreement the withdrawal of the pending due process complaint, a general release of defendants from all claims arising prior to the Agreement of any kind and prospective release of all claims against defendants under the Illinois School Code, Individuals with Disabilities Education Act ("IDEA"), section 504 of the Rehabilitation Act, the Americans with Disabilities Act, the Illinois Human Rights Act, and any ISBE regulations through the end of the 2021-2022 school year. In

4

exchange the District agreed that upon acceptance into a residential facility, it would fund the placement consistent with A.M.'s IEP. It cannot be said this bargain was improvident, oppressive, or one-sided because the District mistakenly believed it would receive reimbursement for the placement from the ISBE. The releases it obtained were valuable consideration for what it gave in the Agreement. Defendants' mistaken expectation that a third party was going to defray the cost of the District's performance under the Agreement, does not diminish the value to the District of what plaintiff and A.M.'s father relinquished for the District's benefit. The contract is not unconscionable and, therefore, is not subject to recission for unilateral mistake.

Plaintiff's likelihood of success on the merits is extremely high. 20 U.S.C. § 1415(e)(2)(F)(iii) makes agreements reached in the 20 U.S.C. § 1415(e) mediation process enforceable by a district court. The parties entered such an agreement and the foregoing analysis shows the agreement almost certainly requires the District to fund A.M.'s placement at Brehm.

Irreparable Harm

The Agreement settled a dispute about A.M.'s placement. It, along with the IEP implementing the Agreement, resolved the dispute by providing a residential placement, funded by the District, commencing June 20, 2021 for a summer session and a residential placement for the 2021-2022 school year, the start of which is imminent. The District's refusal to fund the placement cost for A.M. for the summer session and any further delay in funding will delay his being placed in the agreed upon placement. A.M. has been accepted at Brehm and therefore can start the residential program there immediately. The IEP states that an in-state residential placement is what A.M. needs. Brehm is the in-state residential facility that accepted him. He cannot, at this point, attend any other residential facility. He will be irreparably harmed by being denied funding to attend Brehm.

Traditional Legal Remedies are Inadequate

Plaintiff's traditional legal remedy is the suit to enforce the Agreement. This remedy is inadequate because of the delay that attends litigation. The parties' joint initial status report [19] filed August 6, 2021 states they anticipate discovery to take about one month. Dispositive motions and briefing thereon would then likely occur. Plaintiff would be unlikely to proceed to judgment during the Fall semester leaving only the Spring semester for A.M. to attend Brehm, if plaintiff is ultimately successful, before the Educational Placement Period under the Agreement would expire.

Balance of Harms

Moving to the balancing of harms plaintiff will suffer without an injunction against the harm defendants will suffer with one, the balance falls in plaintiff's favor. As noted, this is a sliding scale, with the more likely the plaintiff is to win, the less heavily the balance of harms need to fall in his favor. As discussed above, plaintiff's likelihood of winning is high. The harm to him is not receiving the residential placement called for in his IEP when the school year starts. The harm to defendants is that the District has to foot the bill for his placement without

reimbursement from the ISBE.  Plaintiff was granted in forma pauperis status in this action [12].  Granting this status, entailed a determination that plaintiff had insufficient income and assets to pay the filing fee.  She necessarily lacks the income or assets to pay for A.M.'s residential placement pending the resolution of this lawsuit.  While the District might prefer to use the funds required to pay Brehm for some other purpose, it will be harmed far less than plaintiff by having to do so.

Public Interest

Finally, entering the injunction is in the public interest.  Defendants argue that the public interest requires denial of the injunction, because it is a public school district so its taxpayers will end up paying for the placement at Brehm if defendants win on the merits.  However, the public has an interest in school districts abiding by their agreements entered under 20 U.S.C. § 1415(e).  Allowing a school district to enter an agreement to settle a placement dispute, and then requiring the parent to proceed to judgment on an action to enforce that agreement, while the educational placement period established by the agreement is running during the course of the litigation, and the child is not in the placement, could undermine the confidence of the public in the value of 20 U.S.C. § 1415(e) mediations.  Granting the injunction is, therefore, in the public interest.

Bond

Fed. R. Civ. P. 65(c) provides that a court may issue a preliminary injunction "only if the movant gives security in an amount the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Despite its seemingly mandatory language, Rule 65(c) grants the court discretion to enter a preliminary injunction without requiring a bond under appropriate circumstances. *Wayne Chemical, Inc. v. Columbus Agency Service Corp.*, 567 F.2d 692, 701 (7th Cir. 1977).  Likelihood of success on the merits is a basis for granting an injunction without a bond, *Huntington Learning Centers, Inc. v. BMW Education, LLC*, No. 10-cv-79, 2010 WL 1006545, * 1 (E.D. Wis. March 15, 2010), as is in forma pauperis status. *Bentz v. Ghosh*, No. 13-cv-00573, 2018 WL 1959780, *6 (S.D. Ill. Apr. 26, 2018).  The court exercises its discretion and issues the preliminary injunction without bond based on plaintiff's in forma pauperis status and high likelihood of success on the merits.

For the foregoing reasons, plaintiff's motion for a preliminary injunction is granted.  Defendants shall pay for A.M.'s residential placement at Brehm starting August 21, 2021 per the terms of the Mediation Agreement entered May 3, 2021, until further order of court.  Plaintiff shall submit a proposed injunction order consistent with this memorandum opinion and in compliance with Fed. R. Civ. P. 65.

Date: 8/18/2021                                  ENTER:

                                                                           United States District Court Judge

Electronic Notices. (LC)